We are now going to move to the last case of the day, Worman v. Entzel. This is Appeal No. 19-2048. First for Appellant Mr. Kohl. May it please the Court, my name is Rockney Kohl and I represent the Appellant Mr. Worman. You know, this is a really unusual case before this Court. Of course, normally I'm over in St. Louis and St. Paul and here I am in the Seventh Circuit asking you to grant a writ on a case out of the Northern District of Iowa. But the facts of this case are truly, I think, remarkable in the sense that Judge Mark Bennett, who was subsequently retired, granted a 167-month variance off of a sentence of a man with his age, which is a difference essentially between a term of years in prison and most likely a life sentence. It was appealed up to the Eighth Circuit. The Eighth Circuit said, you're wrong, you don't get to have this because it's improper consideration of the underlying mandatory minimum. He appeals that to the United States Supreme Court and they say, they deny cert, which of course they can do for any number of reasons. He does not utilize the 2255. He has no reason to and if he were to have done that during that time period, he would have probably had an ethical concern because he had just been rejected. What good faith basis during that year did he have the opportunity to check that? None. So he did not seek that initial remedy. So I think that really squarely presents this case. What does inadequate and ineffective mean for purposes of 2255E? Is it so narrow that it is something that can hardly ever be used? And one of your colleagues who I wish sometimes I could meet is Mr. Posner. His decision from 1997, the way the In Re Davenport case is that he's really looking at that, the 2255E clause, as something that is a safety valve, a true safety valve. When everything else has been done, do you get relief? And are we really saying that someone who lost, and everyone in this courtroom and even today, we're 100% certain that this was a mistake. We're 100% certain that Judge Bennett would have given the reduction had he had that discretion because he did. The government has cited a number of cases that have failed raising Dean-type arguments, but most of those are cases where the court didn't vary downward, right? Or the argument just wasn't advanced. This is one where the argument was clearly presented and he could not have done anything different. This is one of the first times I've actually been here towards the end. I feel like the last speaker in a CLE. I don't think anyone in this particular courtroom could advance one thing that Mr. Warman could have done differently other than the procedure that he did. And I think as- This is not direct relief appeal, it's 2241. And under the savings clause, the new rule has to be retroactive. And I agree, you have sympathetic facts, and if Dean had been issued at the time of sentencing, he would have gotten a lower sentence. But this is habeas review, it's limited what we can do, and for a 2241, the new rule has to be retroactive. And how do you get around the fact that this is a procedural rule? This is sort of the infection of the Teague versus Lane doctrine into this statutory context. I think what I'm arguing, and I think what the court finds in Ray Davenport, is that if you're dealing with statutory constructions, judicial statutory constructions, that it is obviously retroactive as to the first instance. This does not involve a situation where the Supreme Court is reversing itself, or reversing prior precedent. But this is, again, that might be true on direct review, this is not direct review. It's habeas 2241. And Davenport makes clear that Teague's retroactivity analysis applies to non-constitutional statutory rules. I guess that wasn't the way I read that particular case, because they cited Boosley, and they And those two cases were very clear that the Teague versus Lane analysis does not apply in the context of statute. They're different in this sense, though. They're different in that, when you're talking about that whole line of what conduct fits within 924C and what doesn't, the whole, you know, that, you know it. Here we have something that I think everybody's agreeing, one, it's statutory, and two, it's procedural, as opposed to substantive. It's interesting, Your Honor, this is one of these things where It deals with, you know, what amount of discretion can be exercised at sentencing. And I, you know, I think you're absolutely right to start where you did with Mr. Warman and the situation he found himself in here on the, you know, with the timing of Dean. But, I mean, Dean is procedural, I think. I mean, I don't know how to read it otherwise. That is the predominance of the opinion with all of the district courts that have found that it is procedural. But I think if you look at it and you compare it to the fundamental miscarriage of justice cases from the Supreme Court, I haven't seen the Supreme Court analyze procedural, use that sort of procedural analysis in the statutory context. Almost all of the retroactivity case law that I've observed is always in the constitutional context, where you get a new rule of constitutional law, but in terms of purely procedural context, you don't really have that. And so all I would say is that they were interpreted as if it were the first flush interpretation. Relating to In re Davenport, there, again, those cases dealt with this retroactivity question. And I think basically what they said was, and I think it was Rehnquist that said, Justice Rehnquist, that it's just not even applicable when you're interpreting the statutes. Now, it may have been different if the Supreme Court were reversing itself and felt that they got something wrong, but I don't think that's what happened here. Instead, it was sort of a first flush interpretation. And what you really had was, is the Eighth Circuit, unintentionally, in good faith, blocking the access to the courthouse door with an incorrect interpretation. So is your argument that the procedural limit doesn't apply, or that this is not procedural? I don't think that whether it's procedural or not, I think it's a question of that it's a statutory interpretation, and that's really the primary focus here. And again, that is not supported by all the district courts that have analyzed this question. I fully concede that, but I don't think it's consistent with the line of Supreme Court case law that I cite in terms of the miscarriage of justice, in terms of how the Supreme Court actually analyzes that. I briefly want to address this whole question of the Eighth Circuit, and I hope that they'll do a rebuttal. I did file the 2255 in the Northern District of Iowa, and I just want to address very clearly why. This is a very complicated issue. 2241s, I've never had one in my career, and most of the time, they're raised by inmates who don't know what they're doing. Yeah, when you figure it out, send me a letter. Okay. And so when we got that, we were bumping up on the deadline, and I did not want it, is it a 2255, is it a 2241? So I filed both. I was not trying to do it in bad faith. I think that there is a good faith argument whether he was improperly classified. Why did you withdraw it? The reason why I withdrew it, Your Honor, is that I think ultimately it's banging our head up against the wall. I think ultimately there is not going to be a remedy in the Eighth Circuit relating to whether he was improperly classified, because what just kills me about this case is he had a pro se 2255 motion that he filed in the first instance that was kicked out. And if he had counsel, he wouldn't have done that, so it's sort of like he lost that first bite, and I wish the court would have said, hey, do you realize what you're doing here? Be careful what you wish for. So that was his first blush, and by that time, we were essentially stuck, but I think once you look at the judge's ruling on that, we were essentially out of luck, because if you look at those exceptions to the statute of limitations under 2255, they're just not there, and no amount of linguistic contortion could save that except our safety valve. That's what it's for, and are we going to construe it in such a way that it basically, you can never use it. It's just like having a fire alarm or something to blake the glass with and never be able to use it. Well, it's right here, and for Mr. Warman, it's literally, I mean, it is the rest of his life, given his age, and so that's pretty much where we are as far as that goes. Thank you, Mr. Cole. Thank you. Mr. Walters. Good afternoon. May it please the court, Greg Walters again on behalf of the respondent warden. There are, I think, a number of bases to affirm the judgment of the district court, but let me just give you what I think are the two most prevalent. First, that Dean is a new procedural rule. It's therefore not retroactive to cases on collateral review. Second, although as we confess in our brief, there was legal error, that legal error is not a miscarriage of justice within the meaning of the Supreme Court's definition of miscarriage of justice or this court's application of that definition. He is not actually innocent of his crime of conviction, nor of his sentence, and those are the two primary bases. Mr. Walters, the legal error here is pretty significant. It probably is the difference between him dying in prison and getting out before then. Does he have any relief? In theory, he does. I mean, executive relief through commutation of a sentence, and as difficult as that is or as harsh as it sounds is that yes. Does he have any legal relief through the courts? No. Our view is no, and it's interesting. My friend's comment that is 2255E so narrow that it can hardly ever be used respectfully doesn't litigate the Central District of Illinois or the Seventh Circuit because we are inundated with saving clause petitions and it's more than being rarely used. It's becoming a norm instead of the exception proviso that it is. But with that said, it's amended earnestly in our brief. It's certainly, he is sympathetic in the sense there's no doubt that Judge Bennett would have imposed a lower sentence, but it's not distinguishable from the district courts since the guidelines were mandatory through 2006 who said I wish I could impose a lower sentence but I cannot. And yet Booker isn't retroactive to cases on review. And so it's not Judge Bennett's view of what he would have done that makes this compelling from a legal perspective. It's compelling from a heart perspective, but there are countless cases where judges said I wish I could have done more. I'm sorry. That's all right. If Mr. Worman had counsel who was monitoring SCOTUS blog, understood the dean was out there, had been briefed, is there any type of tolling arrangement or agreement that could have been struck to allow him to have been monitoring the fact that this opinion may come down with an issue that might impact his sentencing and then affected him? You know I can't speak for that office. I know that we have done tolling agreements in the wake of Johnson, in the wake of other cases we've done tolling agreements with our public defender's office. So you know but for it to be reliant upon whether he sought a tolling agreement or not, my understanding of his first 2255, I think which makes him even more sympathetic is if he had filed that in the 7th Circuit instead of the 8th Circuit, it wouldn't have been summarily dismissed. The court would have at least reached the merits because it was based on the 2015 decision in Johnson examining the residual clause of the ACCA. Like many defendants in this circuit, they took the reasoning of Johnson and sought to apply it to 924C3B, which is the definition of crime of violence for purposes of 924C. Some circuits like our circuit had held that Johnson not only applied retroactively but to all residual clause types of arguments, whereas the 8th Circuit I believe was a little more restrictive saying no, Johnson is a new rule with respect to the ACCA, not with respect to other residual clauses. So I think he felt like he needed to probably file his 2255 to try to gain the ability to make an argument based on Johnson and perhaps he still has that now available to him based on Davis, which now squarely held. I don't know. I'm not his attorney. I'm not advising him. But that may be a different claim for which he could get authorization assuming that his argument was based on the residual clause and not the elements clause of 924C3, but I don't know the answer. I haven't examined that. And unless there are questions, I join Judge Scudder is that I haven't figured out the saving clause. But . . . No. It's a . . . I'll tell you though. It's a painful example of the complexity of what we're dealing with here. I mean, Mr. Cole, you know, has some difficult conversations perhaps to have with Mr. Warman. Mr. Warman is sitting in prison for at least 168 months or 167 months longer than he otherwise would have and he's not guessing at that. The district court told him that, you know, and caught by probably what seems like a staggering and unfair amount of legal complexity in trying to pursue post-conviction relief. It is, except in this instance, I mean, again, I think the facts are what make it compelling, but legally I think this is a straightforward case because no court has granted habeas relief based on a new procedural rule. And as far as the whole Boozley versus Teague distinction, we see courts that have over time brought those together. When Boozley was talking about an interpretation of the statute being retroactive, it was because it was a substantive interpretation of 924C. By no means was Boozley saying any time you interpret a statute, it's going to be retroactive. No. Indeed, whether the individuals committed offense conduct. Right. That's the whole, right? That's the issue. Did they commit a 924C violation? Right. And then Schrierow versus Summerlin later clarified that really the second Teague exception is just, is it substantive? So the second Teague exception is really no exception at all. It's what we're not going to say or what we're going to say is if it's substantive, yes, we're going to apply it on collateral review. And a good example is Mathis in the context of 2255. If someone now brings a Johnson claim saying I was convicted under the residual clause, but the government says, oh, no, yours was an elements only. You had the crime of violence because it had the use of force, et cetera. This court in examining whether the elements of the underlying offense meet the elements definition of crime of violence would use that decision in Mathis for the categorical approach because Mathis is retroactive because it's substantive. We may respectfully disagree whether it's new, but that's an example of taking what I would call an old substantive rule, clarifying rule of Mathis, applying it in the context of 2255 where the primary claim is based on constitution, but this court has to get to the determination of whether that underlying statute meets the definition of crime of violence is now properly construed after Davis. If there are no questions, we would ask that you affirm the judgment of the district court. Thank you, Mr. Walters. Mr. Cole, rebuttal. Very briefly, this question of the tolling, we did ask the United States, this is off the record, but we did ask the United States to waive the statute of limitations, and they did not agree to do that. Not this United States, but in the Sioux City office. And the issue, even though the facts in this case are favorable in the sense of the sentence, the underlying offense conduct was essentially a mail parcel package bomb, which was not overly favorable in not making them jump into joy to waive. In terms of this question of fundamental miscarriage of justice, I would direct the court's attention to Narvaez v. United States, where essentially they did find, I think, that at least it was cognizable in the 2255 context for a sentencing error, we are not having an issue where it exceeds the maximum penalty. So I think it does reach that. It does reach the miscarriage of justice. And I would also say that the plain error for United States v. Curtin on direct appeal, they found that even if it's not raised below, that that's plain error. That is very close to the miscarriage of justice standard. Element one of retroactivity is there. Element three is there. Two is the close call for you all. And I think that the Supreme Court case law is going to be the guy that's cited in the brief. Thank you very much. Thank you, Mr. Cole. Thank you, Mr. Walters. The case will be taken under advisement. That will complete our hearings for the afternoon, and we'll be in recess. Thank you.